# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM ORANDI,<br><br>    Plaintiff,<br><br> v.<br><br>TRUTRADE L.L.C.,<br><br>    Defendant. | Case No. 1:25-cv-01245-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT<br><br>ORDER DIRECTING THE CLERK OF COURT TO RANDOMLY ASSIGN THIS MATTER TO A DISTRICT JUDGE<br><br>(ECF No. 13)<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

Pending before the Court is Plaintiff Adam Orandi's ("Plaintiff") motion for default judgment. Plaintiff seeks default judgment against Defendant TruTrade L.L.C. ("Defendant or TruTrade"). No opposition to the motion was filed. On December 17, 2025, the Court held a hearing on the motion, at which no appearance was made on behalf of Defendant. Having considered the moving papers, the declarations and exhibits attached thereto, as well as the Court's file, the Court issues the following findings and recommendations recommending denying Plaintiff's motion for default judgment.

///

///

///

1

## I.

## BACKGROUND

### A.    Procedural History

On September 19, 2025, Plaintiff filed this action against Defendant.  (ECF No. 1.) Defendant did not respond to the complaint.  On October 22, 2025, Plaintiff requested an entry of default be entered against Defendant (ECF No. 6), and the Clerk of the Court entered an entry of default the same day.  (ECF No. 7.)

On November 12, 2025, Plaintiff filed a motion for default judgment against Defendant. (ECF No. 13.)  Defendant did not file an opposition to the motion or otherwise appear in this action.  The deadline to file an opposition has passed.  See L.R. 230(c).

On December 17, 2025, the Court held a hearing with the courtroom open to the public. (ECF No. 14.)  Counsel Justin D. Harris appeared on behalf of Plaintiff.  No one appeared on behalf of Defendant.  During and following the hearing, the Court identified issues concerning service of process and diversity of citizenship and directed Plaintiff to submit supplemental briefing.  (ECF Nos. 14, 16.)  Plaintiff subsequently submitted supplemental briefing.  (ECF Nos. 15, 17.)

### B.    Allegations in the Complaint

Plaintiff brings claims against Defendant TruTrade for breach of contract, fraud, conversion, false advertising, and declaratory relief.  (ECF No. 1.)

In or around April 2025, Plaintiff was introduced to Defendant TruTrade by a mutual acquaintance who recommended TruTrade as an investment opportunity.  (Id. at ¶ 8.)  On or about April 10, 2025, David Chavez, acting on behalf of TruTrade as its "Tru-AI Trading Specialist," contacted Plaintiff by email to solicit his participation in TruTrade's "Private Client Package" program.  (Id. at ¶ 9.)  Mr. Chavez represented that TruTrade's proprietary A.I.-driven portfolio management system would provide Plaintiff access to "funded trading accounts" capable of generating substantial returns.  (Id. at ¶ 10.)  Mr. Chavez furnished Plaintiff with a Private Client Package Overview outlining the program's purported benefits, including lifetime licenses to TruTrade's trading software, access to TruTrade's A.I. bots, multiple funded accounts supported

2

by TruTrade's systems, and "40 free QuickFund credits" designed to expedite account funding. (Id.)  Mr. Chavez promoted the "Tier 4" Private Client Package for $50,000, promising priority onboarding and guaranteeing that the accounts would be funded within 30 days or Plaintiff would receive a full refund.  (Id. at ¶¶ 11, 17, Ex. A.)  Plaintiff agreed to purchase the Private Client Package and, on or about April 10, 2025, wired $50,000 to TruTrade's designated account pursuant to the instructions provided by Mr. Chavez and TruTrade. (Id. at ¶ 12.)  TruTrade confirmed receipt of the funds and informed Plaintiff that his funded trading accounts would be established immediately, referencing Plaintiff's "Private Client" onboarding status.  (Id. at ¶ 13.)

After receiving Plaintiff's $50,000 payment, Defendant informed Plaintiff that, contrary to its earlier representations, he would not be directly funded.  (Id. at ¶ 14.)  Instead, Plaintiff was required to purchase separate evaluation accounts through a third-party trading company, Apex Trader Funding.  (Id.)  On April 22, 2025, Defendant directed Plaintiff through email to purchase $50,000 evaluation accounts from ApexTraderFunding.com, provide his Apex/Rithmic login credentials to TruTrade so the accounts could be connected to TruTrade's QuickFund servers, and pay additional fees for any resets if the evaluation accounts failed.  (Id. at ¶ 15, Ex. C.)  Plaintiff was further advised that, on average, "the amount of tries to get funded is 3–5 so you might have to reset a couple of times."  (Id. at 16, Ex. C.)  Following Defendant's instructions, Plaintiff purchased the evaluation accounts from Apex Trader Funding and provided TruTrade with the requested login credentials.  (Id. at ¶ 18, Ex. D.)  Apex Trader Funding's receipt expressly stated: "This is not an investment opportunity. You do not deposit any funds for investment."  (Id. at ¶ 19, Ex. D.)

On or about April 24, 2025, Defendant emailed Plaintiff confirming that his accounts were "set up" and "would continue to trade tomorrow."  (Id. at ¶ 21, Ex. E.)  Despite these assurances, Plaintiff's accounts were never funded, he did not receive any profits, and he was not provided access to any funded accounts.  (Id. at ¶ 22.)  In connection with the Private Client Package, Defendant required Plaintiff to execute a QuickFund AI Service Agreement on or about April 14, 2025, which provided that if Plaintiff's accounts were not funded within 30 days of the start of the evaluation period, Defendant would refund the full purchase price paid for the QuickFund

program.  (Id. at ¶ 24, Ex. F.)  Plaintiff repeatedly contacted Defendant seeking updates and requesting a refund under the 30-day limited money-back guarantee, but Defendant refused to return Plaintiff's funds.  (Id. at ¶ 23.)

## II.

## LEGAL STANDARD

"[D]efault judgments are ordinarily disfavored" because "[c]ases should be decided upon their merits whenever reasonably possible."  NewGen, LLC v. Safe Cig, LLC, 840 F.3d 606, 616 (9th Cir. 2016) (quoting Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986)).  Pursuant to Federal Rule of Civil Procedure ("Rule") 55, obtaining a default judgment is a two-step process.  Entry of default is appropriate as to any party against whom a judgment for affirmative relief is sought that has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure and where that fact is made to appear by affidavit or otherwise.  Fed. R. Civ. P. 55(a).  After entry of default, a plaintiff can seek entry of default judgment.  Fed. R. Civ. P. 55(b).  Rule 55(b)(2) provides the framework for the Court to enter a default judgment:

> Entering a Default Judgment.
>
> (2) By the Court.  In all other cases, the party must apply to the court for a default judgment.  A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
>
> (B) determine the amount of damages;
>
> (C) establish the truth of any allegation by evidence; or
>
> (D) investigate any other matter.

Id.

The decision to grant a motion for default judgment is within the discretion of the court.  PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002); see also TeleVideo

Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987). The Ninth Circuit has set forth the following seven factors (the "Eitel factors") that the Court may consider in exercising its discretion: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel, 782 F.2d at 1471-72.

Generally, once default has been entered, "the factual allegations of the complaint, except those relating to damages, will be taken as true." Garamendi v. Henin, 683 F.3d 1069, 1080 (9th Cir. 2012) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)); see also Fed. R. Civ. P. 8(b)(6). The amount of damages must be proven at an evidentiary hearing or through other means. Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1236 (E.D. Cal. 2008). Additionally, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (internal citation omitted). The relief sought must not be different in kind or exceed the amount that is demanded in the pleadings. Fed. R. Civ. P. 54(c).

## III.

## DISCUSSION

The Court first considers whether it has proper jurisdiction over this matter and then turns to the Eitel factors to determine whether default judgment should be entered.

### A.      Subject Matter Jurisdiction

Plaintiff brings this action in federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). Pursuant to 28 U.S.C. § 1332, federal courts have original jurisdiction of all civil actions between citizens of different States in which "the matter in controversy exceeds the sum or value of $75,000, … and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state…." 28 U.S.C. § 1332(a)(1)-(2). "The party asserting federal subject matter jurisdiction bears the burden of proving its existence." Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010).

The amount in controversy is the "amount at stake in the underlying litigation," which comprises "any result of the litigation, excluding interests and costs, that entails a payment by the defendant," including "*inter alia*, damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes." Gonzales v. CarMax Auto Superstores, LLC, 840 F.3d 644, 648-49 (9th Cir. 2016) (internal citations omitted). In determining the amount of controversy, courts first look to the complaint. Ibarra v. Manheim Invs, Inc., 775 F.3d 1193, 1197 (9th Cir. 2015). Generally, the sum claimed by the plaintiff controls if the claim is made in good faith. Id. Here, Plaintiff merely asserts that the amount in controversy exceeds $75,000. (ECF No. 1, ¶ 4.) Although it is conceivable, based on the nature of the claims alleged, Plaintiff's conclusory assertion, standing alone, is insufficient to establish that the amount in controversy is satisfied.

Turning to diversity of citizenship, the complaint alleges that Plaintiff is a resident and citizen of Minnesota, and that Defendant is a limited liability company organized under the laws of Nevada and whose principal place of business is in Nevada. (ECF No. 1, ¶¶ 1-2.) This is insufficient to establish diversity jurisdiction. A limited liability company, or LLC, "is a citizen of every state of which its owners/members are citizens." Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006). "An LLC's principal place of business [or] state of organization is irrelevant" for the purposes of diversity jurisdiction. Buschman v. Anesthesia Bus. Consultants LLC, 42 F. Supp. 3d 1244, 1248 (N.D. Cal. 2014). Thus, to properly establish diversity jurisdiction with respect to a limited liability company, the citizenship of all members must be pled.

The Court previously addressed this issue in an order directing Plaintiff to file supplemental briefing. (ECF No. 16.) In response, Plaintiff proffered that the Nevada Secretary of State lists Brian Nutt and Danny Rebello as managing members of TruTrade LLC and contended that complete diversity exists based on traffic citations issued to both individuals by the Arizona Department of Transportation. (ECF No. 17.) The Court finds such argument unpersuasive, as "the need for speed" does not establish an individual's domicile. Traffic citations may merely reflect instances of temporary presence or activity in a state, not of a person's

residence, much less domicile.  Moreover, while the traffic records list each individual's "address" (the city and state) for each violation, domicile requires a combination of physical presence and the intent to remain, neither of which can be inferred solely from the records presented.  See Kanter v. Warner-Lamber Co., 265 F.3d 853, 857 (9th Cir. 2001).  Accordingly, the Court finds that Plaintiff has not met his burden of establishing diversity jurisdiction under 28 U.S.C. § 1332.

**B.      Service of Process**

The Court next considers whether Plaintiff properly effectuated service of process.  "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4."  Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc. (Direct Mail), 840 F.2d 685, 688 (9th Cir. 1988) (citations omitted).  "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint."  Id. (quoting United Food & Com. Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1382 (9th Cir. 1984)).  However, "without substantial compliance with Rule 4, 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction.'"  Id. (quoting Benny v. Pipes, 799 F.2d 489, 492 (9th Cir. 1986)).  "[A] signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence."  SEC v. Internet Sols. for Bus., Inc., 509 F.3d 1161, 1163 (9th Cir. 2007).

Plaintiff is suing a limited liability company in this action.  Federal Rule of Civil Procedure 4(h) governs service on a legal entity, such as a domestic corporation, partnership, or limited liability company.  Under 4(h), service of process is satisfied by the manner prescribed by Rule 4(e)(1) for serving an individual or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(h)(1).

Here, the business search page of the Nevada Secretary of State website provides that TruTrade, LLC's agent for service of process is Registered Agents Inc., located at 732 S. 6th Street, Suite R, Las Vegas, NV 89101.[1]  Business search for TruTrade LLC, Nev. Secretary of

---

[1] Courts may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Courts may also take judicial notice of information displayed on government websites where neither party disputes the

State, https://esos.nv.gov/EntitySearch/BusinessInformation (last visited Jan. 5, 2026).  The proof of service reflects that Plaintiff served Defendant TruTrade with the summons and complaint on its registered agent, Registered Agents Inc., by personally serving Kyle Martinez at 732 S. 6th Street, Suite R, Las Vegas, NV 89101 on September 29, 2025.  (ECF No. 5.)  Although Plaintiff purported to serve Defendant through its registered agent, the Court is unable to ascertain who Kyle Martinez is or what his relationship, if any, is to Registered Agents Inc.

At oral argument, counsel was unable to explain Mr. Martinez's role with Registered Agents Inc.  The Court therefore permitted supplemental briefing on this issue, but Plaintiff has not submitted evidence demonstrating that Mr. Martinez was authorized to receive service of process for Defendant.  Absent any indication of who Kyle Martinez is, the operative proof of service is deficient.  See Ewing v. Camus, 2025 WL 3542154, at *3 (S.D. Cal. Apr. 1, 2025) (rejecting proof of service that did not identify who the person was or what their relationship to the defendant or the registered agent was); see also Green Builders LLC v. United States Green Builders Corp., 2024 WL 4625331, at *2 (W.D. Wash. Oct. 30, 2024) ("service is deficient where the process served… makes no attempt to ascertain the title or corporate position of the individual who accepted the papers or even to inquire whether the individual was actually an employee of the [registered agent] corporation.").  Mr. Martinez "might be an authorized recipient for process; [he] could also be an unauthorized employee of [the registered agent corporation], an employee of another entity, an interloper, or a mere passerby."  Id.  Absent such information, the Court finds that Plaintiff has not met his burden of demonstrating proper service of process under Rule 4.

Accordingly, the Court recommends denying Plaintiff's motion for default judgment without prejudice due to improper service and lack of subject matter jurisdiction.  Nevertheless, the Court will proceed to consider whether the Eitel factors otherwise weigh in favor of granting the motion.

/ / /

/ / /

---

accuracy of the information contained therein, including the Nevada Secretary of State's website.  See Daniels-Hall v. Nat'l. Educ. Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010); Gerritsen v. Warner Bros. Ent. Inc., 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015).

## C.   The Eitel Factors

The Court finds that consideration of the Eitel factors weighs in favor of granting default judgment in favor of Plaintiff.

### 1. Possibility of Prejudice Toward Plaintiff

The first factor considered is whether Plaintiff would suffer prejudice if default judgment is not entered.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover against that defendant.  Id.; Moroccanoil, Inc. v. Allstate Beauty Prods., 847 F. Supp. 2d 1197, 1200-01 (C.D. Cal. 2012).  Plaintiff contends that denying judgment would prejudice him because Defendant TruTrade has "failed to appear, plead, or otherwise defend, Plaintiff has no alternative means of recovery or relief." (ECF No. 13-3, p. 3.)  However, as discussed above, service was improper, which may explain Defendant's nonappearance.  Therefore, while entry of default ordinarily supports an inference of prejudice to a plaintiff, the Court is unable to make a determination here due to the deficiencies in service.

### 2. Merits of Plaintiff's Claims and Sufficiency of the Complaint

The second and third Eitel factors, taken together, "require that a plaintiff state a claim on which the [plaintiff] may recover." PepsiCo, Inc., 238 F. Supp. 2d at 1175.  As an initial matter, the Court observes that the QuickFund Agreement contains a limited liability clause stating that Defendant will not be liable under any legal or equitable theory. (ECF No. 13-1, p. 22.)  Under California law, however, contractual provisions cannot exempt a party from liability for its own fraud, willful injury, or violation of law, whether willful or negligent.  See Cal. Civ. Code § 1668.

The complaint asserts five causes of action.[2]  The Court addresses whether Plaintiff has sufficiently pled each claim in turn.

///

---

[2] Plaintiff states in his motion that the complaint pleads detailed facts establishing TruTrade's liability for aiding and abetting. (ECF No. 13-3, p. 3.)  However, the complaint alleges this claim only against David Chavez. (ECF No. 1, p. 10.)  Plaintiff filed a notice of voluntary dismissal as to Mr. Chavez on October 28, 2025, and the Court thereafter terminated Mr. Chavez from this action. (ECF Nos. 10, 12.)  Because the motion for default judgment is directed solely against Defendant TruTrade, the Court will not analyze the merits or sufficiency of the aiding and abetting claim.

9

### A. Breach of Contract

A claim for breach of contract requires proving: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." Tribeca Cos., LLC v. First Am. Title Ins. Co., 239 Cal. App. 4th 1088, 1109 (2015). Here, Plaintiff alleges that he entered into a written agreement with Defendant, in which Defendant agreed to provide Plaintiff with access to its QuickFund AI program, including the establishment of funded trading accounts within 30 days from the start of evaluation period, along with a limited money-back guarantee if the accounts were not funded during that period. (ECF No. 1, ¶¶ 30-32.) Despite Plaintiff's payment of $50,000 to Defendant in exchange for access to the program, Defendant failed to fund Plaintiff's accounts and refused to return Plaintiff's payment. (Id. at ¶ 36.) As a result of Defendant's breach, Plaintiff has been deprived of the $50,000 paid under the agreement and has suffered additional incidental and consequential damages. Accordingly, Plaintiff has sufficiently pled a breach of contract claim.

### B. Fraud

Under California law, an action for fraud requires a showing of: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage." Engalla v. Permanente Med. Grp., Inc., 15 Cal. 4th 951, 974 (1997). In federal court, fraud claims are held to a heightened pleading standard under Federal Rule of Civil Procedure Rule 9(b), which requires a party to plead each element of a fraud claim with particularity. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003). To satisfy this requirement, a plaintiff must provide the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

Here, Plaintiff alleges that Defendant knowingly and intentionally made false representations of material fact to Plaintiff in order to induce him to purchase its services. (ECF No. 1, ¶ 40.) Defendant represented that if Plaintiff paid $50,000, he would receive immediate access to funding trading accounts, his funds would be used to directly fund those accounts, and

that if the accounts were not funded with 30 days, he would receive a full refund. (Id. at ¶ 41.) However, after receiving Plaintiff's payment, Defendant instructed Plaintiff to purchase separate third-party evaluation accounts, provide his username and passwords for these accounts, and pay additional reset fees. (Id. at ¶ 43.) Plaintiff claims Defendant knew these statements were false because the third-party evaluation account expressly disclaimed any investment relationship, contradicting Defendant's representations. (Id. at ¶ 42.) Moreover, Defendant never funded Plaintiff's accounts and refused to refund Plaintiff as described in the agreement. (Id. at ¶ 45.) As a result, Plaintiff suffered economic damages, including the $50,000 payment, additional fees associated with the evaluation accounts, and lost profits and opportunities he reasonably expected under Defendant's representations. (Id. at ¶¶ 49-50.)

The Court finds that Plaintiff has adequately stated a claim for fraud. Defendant's knowledge of falsity and intent to defraud can reasonably be inferred from the timeline alleged in the complaint. The Agreement was executed on April 14, 2025, and stated that "TruTrade LLC agrees to fund the account(s) listed . . . with the starting balance(s) indicated . . . within 30 days of purchase or TruTrade will refund the entire purchase price." (Id., Ex. F.) Nevertheless, Defendant cut off contact nearly immediately after receiving the $50,000 payment, suggesting that Defendant had no actual intention of following through on the terms of the agreement and misrepresented its intentions to secure payment from Plaintiff. (See Orandi Decl., ¶¶ 6-7, 10.)

### C. Conversion

To establish conversion, a plaintiff must show: "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." Greif v. Sanin, 74 Cal. App. 5th 412, 449 (2022). Conversion is a strict liability tort and "[q]uestions of defendant's good faith, lack of knowledge, and motive are ordinarily immaterial." Id. Here, Plaintiff alleges that he wired $50,000 to Defendant for the purpose of establishing trading accounts. As described above, Defendant failed to provide the promised accounts and refused to return Plaintiff's payment despite the limited money-back guarantee. Plaintiff did not consent to Defendant's retention of his $50,000 for any purpose other than those expressly represented and promised by Defendant. (ECF No. 1, ¶ 67.) These

11

allegations are sufficient to state a claim for conversion.

### D. False Advertising

California Business & Professions Code § 17500 makes it unlawful for any person, firm, corporation, or association to make or disseminate, in any advertising medium, any statement that is untrue or misleading, and that is known, or by the exercise of reasonable care should be known, to be untrue or misleading, for the purpose of inducing the public to purchase goods or services. To prevail, a plaintiff must prove that the defendant made such a statement in connection with the sale of personal property or services. PepsiCo, 238 F. Supp. 2d at 1176.

Plaintiff alleges that Defendant disseminated untrue and misleading statements through email communications, marketing materials, and written documents relating to TruTrade's Private Client Package and QuickFund Program. (ECF No. 1, ¶ 72.) Plaintiff was informed that his payment would secure funding trading accounts managed through TruTrade, that his payment would directly fund those accounts, that he would receive a full refund if his accounts were not funded within 30 days, and that his payment would provide "priority onboarding" plus "40 free QuickFund credits." (Id. at ¶ 73.) However, upon receiving payment, Plaintiff was required to purchase third-party funding evaluation accounts at his own expense, the third-party expressly disclaimed the existence of any investment relationship, his ability to obtain a funded account depended on passing the third-party evaluation process, and his payment was not used to fund any trading accounts. (Id. at ¶ 74.) Plaintiff relied on Defendant's representations in deciding to transfer $50,000 and asserts that he would not have purchased the Private Client Package had Defendant disclosed the conditions and limitations of the program. (Id. at ¶¶ 75-76.) Taken as true, these allegations are sufficient to state a viable claim for false advertising under California Business and Professions Code § 17500.

### E. Declaratory Relief

The Declaratory Judgment Act allows a federal court to "declare the rights and other legal relations" of parties to a "case of actual controversy." 28 U.S.C. § 2201. A request for declaratory relief alleges an actual controversy when the request is "definite and concrete, touching the legal relations of parties having adverse legal interest," and when it allows for specific and conclusive

relief. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937). Where, as here, jurisdiction is based on diversity, California law controls. St. Paul Mercury Inc. Co. v. Ralee Eng'g Co., 804 F.2d 520, 522 (9th Cir. 1986).

Here, Plaintiff has sufficiently pled an alleged claim for declaratory relief under California Code of Civil Procedure § 1060. Plaintiff alleges that Defendant breached the QuickFund Agreement by failing to provide funded accounts or issue a refund of the payment pursuant to the limited money-back guarantee, and that the parties executed two sets of agreements that contain conflicting provisions regarding refunds. (See ECF No. 1, Exs. F, G.) Because determining the parties' respective rights and duties under these agreements is a proper subject of declaratory relief under § 1060, the Court concludes a declaration would provide concrete legal certainty as to the applicability and enforceability of the competing contractual provisions.

Accordingly, the Court finds that the second and third Eitel factors weigh in favor of default judgment as asserted against Defendant.

### 3. The Sum of Money at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176. "Default judgment is disfavored when the sum of money at stake is too large or unreasonable in relation to defendant's conduct." Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014). Here, Plaintiff seeks restitution of the $50,000 wired to Defendant, in addition to incidental and consequential, and punitive damages. (ECF No. 13, pp. 2-3.) The Court finds the amount Plaintiff seeks is reasonable and is proportional to the harm caused by Defendant. This factor weighs in favor of granting default judgment.

### 4. The Possibility of a Dispute Concerning Material Facts

The fifth Eitel factor considers the possibility of a dispute concerning material facts. As discussed above, Plaintiff has sufficiently alleged breach of contract, fraud, conversion, false advertising, and declaratory relief. The Court finds this factor weighs in favor of entering default judgment as there is no possibility of dispute regarding the material facts due to the factual allegations being taken as true. See Garamendi, 683 F.3d at 1080; PepsiCo, Inc., 238 F. Supp. 2d

at 1177. Accordingly, the Court finds this Eitel factor weighs in favor of granting default judgment in favor of Plaintiff against Defendant.

### 5. Whether Default Was Due to Excusable Neglect

The sixth Eitel factor considers the possibility that a defendant's default resulted from excusable neglect. PepsiCo, Inc., 238 F. Supp. 2d at 1177. Courts have found that where a defendant was "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect. Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001). Here, however, the record does not establish that Defendant was properly served with the summons and complaint. In the absence of proper service, the Court cannot conclude that Defendant's failure to appear was due to excusable neglect. Accordingly, this factor is neutral.

### 6. Policy Favoring a Decision on the Merits

Under the seventh factor, the Ninth Circuit has stated that "[c]ases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Because service of process was improper, Defendant has not been afforded a fair opportunity to appear and defend this action. Entering default judgment under these circumstances would contravene the policy favoring resolution of disputes on their merits. Accordingly, this factor weighs against default judgment.

Taken together, the Court finds that the Eitel factors weigh in favor of granting default judgment against Defendant. However, because service was improper and the Court lacks subject matter jurisdiction, the Court recommends that Plaintiff's motion for default judgment be denied without prejudice.

### D. Requested Relief

Turning next to the requested relief, Plaintiff requests an award of (1) $50,000 in compensatory damages; (2) $2,328.77 in prejudgment interest, (3) $230.00 in out-of-pocket

14

expenses, (4) $13,247.50 in attorneys' fees and $1,014.97 in litigation costs, and (5) $100,000.00 in punitive damages.

### 1. Compensatory Damages

Plaintiff seeks the return of the $50,000.00 wired to Defendant on or about April 10, 2025, based on Defendant's representations that the funds would be used to establish funded trading accounts and, if no such funding occurred within 30 days, Plaintiff would be refunded in full. (ECF No. 13-1, Declaration of Adam Orandi ("Orandi Decl."), ¶¶ 3-5, Exs. B-C.) Plaintiff alleges that Defendant never funded any trading accounts, failed to return the funds, and ceased all communication. (ECF No. 13-3, p. 5; Orandi Decl., ¶¶ 6-7, 10.) Because the payment is evidenced by a bank transfer receipt, the Court finds that Plaintiff's request for $50,000.00 in compensatory damages is supported. See Nike, Inc. v. B&B Clothing Co., 2007 WL 1515307, at *1 (E.D. Cal. May 22, 2007) ("Where damages are liquidated or otherwise capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits, judgment by default may be entered without a damages hearing.").

### 2. Prejudgment Interest

Plaintiff further seeks prejudgment interest on the $50,000.00 principal at the statutory rate of ten percent (10%) per annum pursuant to California Civil Code § 3289(b). Section 3289 provides that, "if a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach." Cal. Civ. Code § 3289(b). Here, Plaintiff seeks prejudgment interest from April 10, 2025 (the date Plaintiff's funds were taken) through December 24, 2025 (the date Plaintiff anticipated the Court to enter default judgment), totaling $3,534.25, plus interest accruing thereafter at the rate of $13.70 per day until entry of judgment. (ECF No. 13-3, p. 2; ECF No. 15, p. 3.) Because the contract does not stipulate a legal rate of interest, the Court finds Plaintiff's request for prejudgment interest appropriate.

### 3. Incidental and Consequential Damages

Plaintiff incurred out-of-pocket expenses in connection with Defendant's program, including fees paid to third-party evaluation services and account setup charges. (Orandi Decl.,

¶ 8, Ex. E.)  Plaintiff contends that Defendant represented these costs would be reimbursed or credited as part of the program.  (Id.)  However, after receiving Plaintiff's $50,000 payment, Defendant informed Plaintiff that he would not be directly funded.  (ECF No. 1, ¶ 14.)  Instead, Plaintiff was required to purchase separate evaluation accounts through third-party services, and relying on Defendant's instructions, he purchased these evaluation accounts.  (ECF No. 1, ¶¶ 14, 18; Ex. C.)  Plaintiff seeks $230.00 for the evaluation, as well as the recurring monthly charges paid from April 22, 2025 through November 3, 2025.  (ECF No. 13, p. 2.)  Plaintiff asserts that these expenses were induced by Defendant's misrepresentations and are recoverable as consequential damages arising from the breach under California Civil Code § 3300.  (ECF No. 13-3, p. 5.)  The Court agrees and finds that Plaintiff's request for $230.00 in incidental and consequential damages is reasonable.

        4.  Attorneys' Fees and Costs

Plaintiff also seeks $13,247.50 in attorneys' fees and $1,014.97 in costs.  (ECF No. 13, p. 3; ECF No. 15, p. 4.)  Courts determine reasonable attorney fees according to the lodestar analysis, which multiplies the number of hours reasonably expended on the matter by a reasonable hourly rate.  See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  In considering what constitutes a reasonable hourly rate, the Court looks to the prevailing market rate in the relevant community.  Blum v. Stenson, 465 U.S. 886, 895 (1984).  The "relevant community" for the purposes of the lodestar calculation is generally the forum in which the district court sits.  Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013).  "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum, 465 U.S. at 895 n.11.  The party seeking fees also bears the initial burden of establishing the hours expended in litigating the case and must provide detailed time records documenting the tasks performed and the corresponding expenditures.  Hensley, 465 U.S. at 434.

Plaintiff's supporting declaration states that the law firm has spent approximately 44.75 hours investigating and prosecuting this action, including client communications, drafting the

16

complaint, coordinating service, preparing the default papers, and drafting the present motion and supporting documents.  (Harris Decl., ¶ 9.)  Plaintiff seeks a total of $12,272.50 in attorneys' fees.  (ECF No. 13, p. 3.)  The rates requested are based on 2 hours of work by the managing attorney at a rate of $490.00 per hour, 1 hour of work by an associate at a rate of $325.00 per hour, 38.5 hours of work by a paralegal at a rate of $225.00 per hour, and 3.25 hours of work by a legal secretary at $200.00 per hour.  (Harris Decl., ¶¶ 9-13.)  The Court notes that the declaration Plaintiff provides only sets forth the experience and expertise of Managing Attorney Justin D. Harris and not that of any other attorney or staff.  (Id. at ¶ 11).  Without this information or supporting billing documentation, the Court is unable to make a determination on the requested fees.  See e.g., Zynga Game Network Inc. v. Erkan, 2010 WL 3463630, at *2 (N.D. Cal. Aug. 31, 2010) (denying attorneys' fees and costs where plaintiff failed to provide documentation of billing records).

In connection with the supplemental briefing, Plaintiff states that he has expended an additional $975.00, bringing the total to $13,247.50.  (ECF No. 15, p. 3.)  However, similar supporting details are missing, preventing the Court from awarding attorneys' fees and costs.  The Court therefore finds Plaintiff's request for attorneys' fees is inappropriate at this time.

5.  Punitive Damages

Lastly, Plaintiff seeks $100,000.00 due to Defendant's fraudulent and willful conduct in inducing the $50,000 payment and retaining those funds without performance.  (ECF No. 13-3, pp. 6-7.)  Under California law, punitive damages may be awarded where the defendant acted with 'fraud, or malice,' express or implied, which must be proven with clear and convincing evidence.  Cal. Civ. Code § 3294(a).  In assessing the appropriateness of punitive damages, courts consider: (1) the nature of defendants' acts; (2) the amount of compensatory damages awarded; and (3) the wealth of the defendants.  Prof'l Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc., 727 F.2d 1470, 1473 (9th Cir. 1984).  However, a court "cannot make a fully informed determination of whether an award of punitive damages is excessive unless the record contains evidence of a defendant's financial condition."  Shanghai Automation Instrument Co., Ltd. v. Kuei, 194 F. Supp. 2d 995, 1011 (N.D. Cal. 2001).  Here, Plaintiff does not allege, argue, or present any evidence on Defendant's finances.  In the absence of such evidence, the Court finds

17

Plaintiff's request for punitive damages premature.

In sum, while the Court has considered Plaintiff's requested relief and supporting evidence, the Court cannot recommended granting any of the requested damages, fees, or costs at this time due improper service and lack of subject matter jurisdiction.

### IV.

### ORDER AND RECOMMENDATION

IT IS HEREBY ORDERED that the Clerk of the Court is DIRECTED to randomly assign this matter to a District Judge.

For the reasons set forth above, the Court HEREBY RECOMMENDS that Plaintiff's motion for default judgment (ECF No. 13) be DENIED without prejudice due to improper service and lack of subject matter jurisdiction.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **January 29, 2026**                                   _____

STANLEY A. BOONE
United States Magistrate Judge

18